FILED
ASHEVILLE, N.C.
NOV 14 2019
U.S. DISTRICT COURT
W. DIST. OF N.C.

# UNITED STATES DISTRICT COURT
for the
Western District of North Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 1:19mj107
)
Information associated with Telephone 828-736-5055 )
that is stored at premises controlled by Cellco )
Partnership d/b/a Verizon Wireless )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____North Carolina_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of controlled substances resulting in death |

The application is based on these facts:

See attached Affidavit of Special Agent Kevin Lau

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kevin Lau, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/14/2019

_____
*Judge's signature*

City and state: Asheville, NC U.S Magistrate Judge W. Carleton Metcalf, WDNC
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH:

Telephone Number **828-736-5055**

THAT IS STORED AT PREMISES
CONTROLLED BY **CELLCO
PARTNERSHIP DBA VERIZON
WIRELESS**

Case No. 1:19 mj 107

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kevin Lau, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(828) 736-5055**, with International Mobile Equipment Identity **3594640890557231**, (hereinafter referred to as the "SUBJECT PHONE"), that is stored at premises controlled by Cellco Partnership d/b/a Verizon Wireless (hereinafter referred to as "Verizon"), a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent ("SA") with the United States Department of the Interior – Bureau of Indian Affairs ("BIA") – Division of Drug Enforcement ("DDE"). I became a BIA SA in July of 2017 and was assigned to North Dakota. Since November of 2018, I have been assigned to the United States Drug Enforcement Administration ("DEA") – Asheville Post of Duty ("APOD") in Asheville, North Carolina ("NC"). I am "an investigative or law enforcement officer of the United States," within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516 and Title 21 of the United States Code. Prior to becoming a BIA SA, and between 2012 and 2017, I was a Reserve Police Officer for the Locust Grove Police Department in Locust Grove, Oklahoma; I was a Detention Officer and then Deputy for the Tulsa County Sheriff's Office in Tulsa, Oklahoma; and a Police Officer for the BIA in Wyoming.

3. I have received training from several state, local, and federal law enforcement agencies throughout the United States. I am a graduate from the Council on Law Enforcement Education and Training ("CLEET") in Ada, Oklahoma and from the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico and Glynco, Georgia.

4. I have conducted and/or participated in many complex investigations utilizing a variety of investigative techniques to include, but not limited to: physical and electronic surveillance; questioning of witnesses, suspects, and informants; applications for and executions of search, seizure, and arrest warrants; and evidence collection. I also have training and experience in the recognition of controlled substances and paraphernalia used for ingesting, distributing, manufacturing, and storing controlled substances; as well as, recognizing conduct

common to drug traffickers such as the laundering of drug proceeds derived from the sale of controlled substances.

5. I have also conducted and/or participated in numerous drug trafficking investigations and learned that drug traffickers often use cellular telephones to assist in their activities. Such cellular telephones often times contain lists of contacts for customers, associates and sources of supply (including names, addresses, phone numbers, email addresses, and other identifying information); information related to types, amounts and prices of drugs being trafficked, imported or purchased; and information related to dates and places of specific transactions. The majority of the controlled substances found in the United States are imported from foreign nations and the majority of those controlled substances then move through a variety of states before ending up at their final destination. Information related to international and/or domestic travel are often times stored on cellular telephones. Additionally, modern cellular telephones often have the ability to access the Internet, allowing the phone's user(s) to access financial records and perform monetary transactions, send and receive emails, browse web addresses, and access other information available on the Internet to assist in drug trafficking activities such as Facebook/Instagram and other applications ("apps") used to communicate both publicly and privately.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of United States Code ("U.S.C.") 21§ 841 have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of this crime further described in Attachment B.

## PROBABLE CAUSE

8. As set forth in more detail elsewhere in this affidavit, the Cherokee Indian Police Department ("CIPD") and the BIA are investigating the overdose death of **Catherine Marie ARMACHAIN ("ARMACHAIN")** that occurred on September 16, 2019 at 327 Saloi Drive, Cherokee, Swain County, NC 28719 (hereinafter referred to as the "SUBJECT LOCATION").

9. On September 16, 2019, at approximately 04:50 PM, the Eastern Band of Cherokee Indians Public Safety Communication Center (hereinafter referred to as "Dispatch") notified CIPD officers of a possible drug overdose at the SUBJECT LOCATION, which is in the Birdtown Community. CIPD Patrol Officers Ina Driver and Troy Anthony responded to the SUBJECT LOCATION. Officer ("OFC") Driver was directed to the bedroom where Officer Driver located an American Indian female who was identified as **ARMACHAIN**. OFC Driver determined that **ARMACHAIN** was deceased. At that time, OFC Driver contacted CIPD Detective ("DET") Jason Cable due to the death.

10. On that same date, DET Cable arrived at the SUBJECT LOCATION. OFC Driver told DET Cable that **ARMACHAIN's** body was already stiff and that a syringe was in **ARMACHAIN's** hand. Immediately after receiving the information, DET Cable requested OFC Driver to seize **ARMACHAIN's** cell phone, due to his knowledge and experience knowing that such devices could maintain and store electronically stored information that could be utilized in a death investigation.

4

11. Again, on the same date, Cherokee Tribal Emergency Medical Service ("EMS") Emergency Medical Technician ("EMT") Bob Dunlap and the NC Medical Examiner responded and arrived at the SUBJECT LOCATION. It was believed that **ARMACHAIN** had been deceased for some time, prior to the 9-1-1 call. Therefore, an autopsy was ordered for **ARMACHAIN's** body for the following day, September 17, 2019.

12. On September 17, 2019, DET Cable attended the autopsy of **ARMACHAIN's** body at the Harris Regional Hospital located at 68 Hospital Road, Sylva, NC 28779. During the autopsy, an area was located on **ARMACHAIN's** right arm that resembled an injection point.

13. On that same date, I submitted an administrative subpoena to Verizon for Call Detail Records ("CDRs") between the dates of August 18, 2019 – September 16, 2019, along with a preservation request for Verizon number – 828-736-5055 ("hereinafter referred to as "SUBJECT PHONE"). This phone was provided to me by DET Cable as being utilized by **ARMACHAIN.**

14. On September 19, 2019, I received an invoice from Verizon for the SUBJECT PHONE, invoice number 190240289-44678017.

15. On or about September 20, 2019, I received the SUBJECT PHONE's CDR's from Verizon and reviewed the content. From the review, I learned the following information:

   a. The SUBJECT PHONE had an associated International Mobile Equipment Identity ("IMEI") of 359464089057231.

   b. Between the periods August 18, 2019 – September 16, 2019, the SUBJECT PHONE's CDR's indicated that there were approximately 1,267 calls.

5

c. I reviewed all the calls listed and learned that 215 calls were made to 828-736-9133, 164 calls to 423-212-8187, and 123 calls to 828-508-4660. On the date of ARMACHAIN's death, September 16, 2019, there were 33 calls listed.

d. I reviewed the 33 calls made on September 16, 2019 and learned that the SUBJECT PHONE had an outbound call to 828-736-9133 at 07:13:53 AM and lasted 190 seconds. This call was the last outbound call made from the SUBJECT PHONE.

e. I also reviewed the SUBJECT PHONE"s text messages and learned that the last outbound text message was sent at 03:31 AM to 828-736-4939. This was the last outbound text message made from the SUBJECT PHONE.

16. On October 4, 2019, DET Cable applied for a search warrant for **ARMACHAIN's** phone and was granted by an EBCI Magistrate Judge. On that same date, DET Cable served the search warrant and requested the assistance of the Swain County Sheriff's Office ("SCSO") to fulfill the search warrants request. SCSO attempted to gain access into **ARMACHAIN's** phone, but was unsuccessful.

17. As of November 7, 2019, agents are still waiting to receive any type of documentation from the North Carolina Medical Examiner that indicates the cause of death. From information gleaned through this investigation, agents have learned that **ARMACHAIN** is a known heroin user and on the date that her body was discovered law enforcement officers observed a syringe in her hand that agents believe contained heroin. Furthermore, agents believe that **ARMACHAIN's** death is related to a drug overdose and that this application in support of a

6

Case 1:19-mj-00107-WCM   Document 1-1   Filed 11/14/19   Page 7 of 15

search warrant will allow agents to obtain information from Verizon that will provide information into **ARMACHAIN's** heroin supplier that eventually led to her untimely death.

18. From my training and experience, I know that drug users commonly use their wireless telephone to communicate with their drug supplier and other co-conspirators via text messages, phone calls, etc. Also, I know that drug users will also use applications like Facebook, Instagram, Snapchat, etc. to communicate with their drug supplier and other co-conspirators. Lastly, I know that that individuals will sometimes communicate over their wireless telephone and tell individuals to contact them by other means like (Facebook, Instagram, Snapchat, etc.) which I believe will provide even more information into this investigation.

19. Based on the above, I believe that **ARMACHAIN** likely communicated with her drug supplier, utilizing SUBJECT PHONE, to facilitate the purchase of controlled substances that ultimately led to her death. I also believe that Verizon likely possesses information associated with SUBJECT TELPHONE, which contains information that is relevant to the ongoing investigation, such as location information.

20. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to

a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21. Based on my training and experience, I know that Verizon can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

22. Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

23. Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because

8

the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25. I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Kevin Lau
Special Agent/Task Force Agent
BIA/DEA

*Assistant United States Attorney John Pritchard has reviewed this Affidavit.*

SUBSCRIBED and SWORN
before me this 14th Day of November, 2019

W. Carleton Metcalf
United States Magistrate Judge
Western District of North Carolina

9

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(828) 736-5055**, with International Mobile Equipment Identity **359464089057231** ("the Account"), that are stored at premises controlled by Cellco Partnership d/b/a Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider (Verizon)

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **September 1, 2019 – September 16, 2019**:

   a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received: as well as per-call measurement data (also known as the "real-time tool" or "RTT" data)].

## II. Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of **United States Code 21 § 841** involving unknown persons since **September 1, 2019 to September 16, 2019**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Verizon, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Verizon. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **Verizon**, and they were made by **Verizon** as a regular practice; and

    b.    such records were generated by **Verizon** electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **Verizon** in a manner to ensure that they are true duplicates of the original records; and

        2.    the process or system is regularly verified by **Verizon**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____  _____
Date                          Signature